UNITED STATES DISTRICT COURT          O
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | CIVIL ACTION NO. L-08-90 |
| § | |
| NINETY-EIGHT THOUSAND THREE § | |
| HUNDRED EIGHTY-ONE DOLLARS | |
| AND NO/100THS ($98381.00) U.S. | |
| CURRENCY AND ONE 2000 DINA | |
| VIAGGIO 10000 BUS VIN: | |
| 3ABBBFHA6YS002491 | |

**OPINION AND ORDER**

This is a civil forfeiture action *in rem* against $98,381.00 U.S. Currency and a 2000 Dina Viaggio 1000 Bus.  Pending before the Court is Plaintiff United States of America's and Claimant Alejandro Torres-Lopez's "Motion for Agreed Judgment," [Dkt. No. 14] and Plaintiff's "Motion to Strike Answer and for Default Judgment of Forfeiture and Alternatively, for Summary Judgment of Forfeiture." [Dkt. No. 9].[1]  For the following reasons, the Court **DENIES** the Motion for Agreed Judgment but **INVITES** the parties to resubmit it in accordance with this Order.  The Court **DISMISSES WITHOUT PREJUDICE** the "Motion to Strike Answer and for Default Judgment of Forfeiture and Alternatively, for Summary Judgment of Forfeiture."

I.   FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, U.S. Customs and Border Protection ("CBP") officers conducted an outbound inspection on a 2000 Dina Viaggio 1000 passenger bus displaying the logo "Transportes Torres" at the Lincoln Juarez Bridge No. 2 in Laredo, Texas on August 6, 2007. [Dkt. No. 1 at § 5; Dkt. No. 9, Ex. B: Decl. Daniel Ruiz].  This inspection revealed

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system.  The Court will cite to the docket number entries rather than the title of each filing.

"fourteen bundles of currency concealed in the rear vents of Defendant vehicle located near the driver's sleeper compartment."  [Dkt. No. 1 at § 5].  After discovering the hidden currency, officers detained the driver of the vehicle, Roberto Salazar Ramirez, and the vehicle owner Alejandro Torres-Lopez.[2]  [*Id.*].  Two Immigration and Customs Enforcement ("ICE") officers then interviewed Torres-Lopez.  According to one of these officers, Torres-Lopez informed them that he ran a bus service, Transportes Torres, to Mexico.  Torres-Lopez also stated that he transports money and packages containing letters and photographs for a small fee from persons in Dallas, Texas to their relatives in San Luis Potosi, Mexico. [Dkt. No. 1 at § 5; Dkt. No. 9, Ex. C: Decl. Corey Grubbs].  One of Torres-Lopez's employees maintained records of the senders and intended recipients of the money received.  [*See id.*; Dkt. No. 9, Ex. A: Pl.'s Resp. to Interrogs.].  Torres-Lopez also allegedly admitted that "he was aware that a license was required to act as a money remitter but that he did not have a license."  [Dkt. No. 1 at § 5; Dkt. No. 9, Ex. C: Decl. Grubbs].  Torres-Lopez allegedly also declared that he knew of the reporting requirement for currency in excess of $10,000 pursuant to 31 U.S.C. § 5316.  [*See* Dkt. No. 1 at § 5; Dkt. No. 9, Ex. C: Decl. Grubbs].  Based on this information, the Government seized the Defendant Vehicle and Currency and filed a verified Complaint for forfeiture against Defendant property pursuant to 31 U.S.C. §§ 5317, 5332 (2006) and 18 U.S.C. §§ 981(a)(1)(A), 1960 (2006). [Dkt. No. 1 at § 4].

     The Government states that it provided notice of this forfeiture action to Torres-Lopez by service upon his attorney via certified mail return receipt requested on July 17, 2008.  [Dkt. No. 9].  The Government also published notice of the forfeiture in the *Laredo Morning Times*, a newspaper of general circulation, once a week for three consecutive weeks beginning on August

---

[2] Torres-Lopez was following the Dina Viaggio bus in a van.  [Dkt. No. 1 at § 5; Dkt. No. 9, Ex. C: Decl. Corey Grubbs].

31, 2008. [Dkt. No. 7]. Torres-Lopez filed an Answer on August 4, 2008. [Dkt. No. 3]. No other claims to the Defendant property have been filed.

On March 13, 2009, the Government, pursuant to Supplemental Rule G(8)(c), moved to strike Claimant Torres-Lopez's Answer because Torres-Lopez never filed a verified claim. [Dkt. No. 9 at 2-3]. Therefore, the Government argued Torres-Lopez had no statutory standing to "participate in the forfeiture proceedings." [*Id.* at 3]. The Government further asked that a default judgment of forfeiture be entered against all potential claimants that have failed to appear. [*Id.* at 3]. Alternatively, the Government moved for summary judgment of forfeiture. [*Id.* at 4-7].

On May 5, 2009, the Government and Claimant Torres-Lopez filed a "Motion for Agreed Judgment" asking the Court to enter judgment as outlined in the motion. [Dkt. No. 14]. First, the parties agree that Defendant Currency is subject to forfeiture under 31 U.S.C. § 5316 and § 5332. [*Id.* ¶¶ 2-3]. Accordingly, the motion announces that Torres-Lopez has withdrawn his claim to Defendant Currency. [*Id.* ¶ 2]. The parties, therefore, contend that "Defendant Currency should be forfeited to the United States" because "no other person or entity has an interest in said currency." [*Id.* ¶ 2 (citing Ex. A: Alejandro Torres-Lopez Aff.)]. Second, the two parties agree that Defendant Vehicle is subject to forfeiture. [*Id.* ¶ 3]. Plaintiff, however, will "return the Defendant Vehicle to Claimant." [*Id.* ¶ 3]. In exchange, Claimant Torres-Lopez "is responsible for paying all costs incurred for towing and storage of said vehicle" and will "join the United States in defending any claim to the Defendant Currency made by any person or entity whatsoever." [*Id.* ¶¶ 2-3].

## II.     DISCUSSION

This is a civil forfeiture action brought to enforce the provisions of 31 U.S.C. § 5332 and 18 U.S.C. § 981(a)(1)(A).  Title 31 U.S.C. § 5332 subjects to forfeiture any property involved in the commission of bulk-cash smuggling and evading the currency reporting requirement of 31 U.S.C. § 5316.  Title 18 U.S.C. § 981 subjects to forfeiture any property involved in the unlicensed transfer of money.  Rule G of the Supplemental Rules for Certain Admiralty and Maritime Claims sets forth the procedures that govern judicial forfeitures.

The Court begins by examining the Government's and Torres-Lopez's "Motion for Agreed Judgment." [Dkt. No. 14].  In this Motion, the parties ask that Defendant Currency be forfeited to the United States and that Defendant Vehicle be returned to Claimant Torres-Lopez. [*Id.*].  According to the parties, the forfeiture of the currency can occur because Torres-Lopez has withdrawn his claim to the currency and "no other person or entity has an interest in said currency." [*Id.* ¶ 2].  The Court, however, cannot order the forfeiture of Defendant Currency to the United States at this time.  The Government has not fully complied with the notice requirements of Supplemental Rule G(4) and, more broadly, due process.

The Due Process clause of the Fifth Amendment prohibits the deprivation of property without "due process of law." U.S. CONST., Amend. V.  Individuals whose property interests are at stake are entitled to "notice and an opportunity to be heard." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993).  Supplemental Rule G(4) sets forth how a plaintiff must provide notice in an asset forfeiture case to ensure due process of law.  FED. R. CIV. P. SUPP. R. G(4).  Supplemental Rule G(4)(a) requires the Government to publish notice of the forfeiture action in a newspaper of general circulation within the district where the court sits once a week for three consecutive weeks.  SUPP. R. G(4)(a).  Plaintiff also must send direct

notice to "any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim." SUPP. R. G(4)(b)(i); *Dusenbery v. United States*, 534 U.S. 161, 168 (2002); *Bailey v. United States*, 508 F.3d 736, 738-39 (5th Cir. 2007) (citing *United States v. Robinson*, 434 F.3d 357, 362 (5th Cir. 2005)). This notice must "be sent by means reasonably calculated to reach the potential claimant." SUPP. R. G(4)(b)(iii); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Bailey*, 508 F.3d at 739; *Mesa Valderrama v. United States*, 417 F.3d 1189, 1197 (11th Cir. 2005). Actual notice is not required. *Bailey*, 508 F.3d at 739 (citing *Dusenbery*, 534 U.S. at 170).

The parties assert that Plaintiff has complied with Supplemental Rule G(4) and due process. [*See* Dkt. No. 14 at ¶¶ 1-3]. Plaintiff published the notice of forfeiture in the *Laredo Morning Times* as required by Rule G(4)(a). [Dkt. No. 7]. Plaintiff also served Claimant Torres-Lopez.[3] [Dkt. No. 14 at ¶ 1]. Torres-Lopez owned the Defendant Vehicle, a passenger bus used to transport the Defendant Currency, and operated the money/letter remittance business that allegedly generated Defendant Currency. [*See* Dkt. No. 14 at ¶ 3; *see also* Dkt. No. 1 at § 5]. But Plaintiff did not serve Torres-Lopez's customers who provided him with the Defendant Currency to transport to San Luis Potosi, Mexico.

In their "Motion for Agreed Judgment," Plaintiff and Claimant Torres-Lopez argue that these customers have no claim or interest in Defendant Currency. [Dkt. No. 14 at ¶ 2 ("The parties agree that Defendant Currency should be forfeited to the United States, and no other person or entity has an interest in said currency.")]. In support of this proposition, the parties attach a Affidavit made by Claimant Torres-Lopez. [*Id.* at Ex. A: Aff. Torres-Lopez]. In this

---

[3] The Court notes that Plaintiff's notice does not exactly comply with Rule G(4)(b)(ii). The notice does not include the date it was sent. It also erroneously states the deadline to file a claim as "within thirty (30) days of having actual notice" instead of "at least 35 days after the notice is sent" as required by the rule. [Dkt. No. 1, Attach. A: Notice of Forfeiture Action].

Affidavit, Torres-Lopez states that he and his mother each took out a loan to pay back his customers and has since done so. [*Id.*].  Thus, the implication is that these customers have no claim or interest in the money.  But this is simply not true.  The customers provided Torres-Lopez with the money to remit to Mexico.  They are potential claimants.  There is also no proof other than Torres-Lopez's sworn statement that he repaid these customers.

The question, therefore, becomes whether the Government should have individually notified these potential claimants.  The Court looks to case law interpreting Rule G(4)(b) and more broadly case law analyzing constitutional due process requirements to answer this question.[4]  While the Government does not need to take heroic measures to identify potential claimants, such as Torres-Lopez's customers, it must make a reasonable effort to identify and notify them.  *Mullane*, 339 U.S. at 314-15; *see also Taylor v. United States*, 483 F.3d 385, 388-89 (5th Cir. 2007) (requiring that the Government's "effort be 'reasonably calculated' to provide notice").  The Government should take steps that "one desirous of actually informing" a potential claimant would under the circumstances.  *Mullane*, 339 U.S. at 315; *Small v. United States*, 136 F.3d 1334, 1338 (D.C. Cir. 1998) (finding that if the Government has a "piece of information that a reasonable person would use to locate the claimant," it is constitutionally obliged to try "unless it would be burdensome to do so").  Whether the Government has made a reasonable effort to identify potential claimants is a fact-specific inquiry based on what the Government knew before the time for filing a claim passed.  *See* SUPP. R. G(4)(b)(i); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983); *Mullane*, 339 U.S. at 314.

In this case, it is undisputed that the Government knew that there were persons, other than Torres-Lopez, with an interest in Defendant Currency.  The Government just did not know

---

[4] The requirement of individual notice to known potential claimants under Rule G was only added in 2006.  FED. R. CIV. P. SUPP. R. G, ADVISORY COMM. NOTES (2006).

their names or addresses. When ICE Agents interrogated Torres-Lopez, Torres-Lopez informed them that he receives money, packages, and letters from "persons in Dallas, Texas and delivers it to their relatives in San Luis Potosi, Mexico" for a $10 fee. [Dkt. No. 9, Ex. C: Decl. Grubbs]. Torres-Lopez also declared that one of his employees, who sold bus tickets and answered the phones, would collect the money. [*Id.*]. This employee then would "put the money inside envelopes and maintain a list of who was sending money and to whom." [*Id.*]. Further, when CBP officers discovered the money it was in individual envelopes, some of which also contained letters. [Dkt. No. 9, Ex. B: Decl. Ruiz]. The Court is hard pressed to believe that at least some of these envelopes or letters did not have names or addresses on them.

The Government, here, had access to a lead, Torres-Lopez's list of customers and their remittances, that it reasonably should have known would provide potentially fruitful information about interested claimants.[5] *See e.g.*, *United States v. One Star Class Sloop Sailboat*, 458 F.3d 16, 24 (1st Cir. 2006); *Small v. United States*, 136 F.3d 1334, 1338 (D.C. Cir. 1998).

Thus, the Government had some duty to elicit this information. *One Star Class Sloop Sailboat*, 458 F.3d at 24 (stating that "[i]f a person using the lead could easily identify and locate the potential claimant, eschewing further inquiry and relying on secondary measures (such as notice by publication) may be unreasonable, or out of step with due process, or both"). Had Torres-Lopez recanted his story or not provided the list in response to an inquiry, the Government would not have been obligated to do more to meet its Rule G(4)(b) or constitutional due process notice requirement. But Torres-Lopez had a log that contained many of the names, addresses, and phone numbers of those who remitted cash as well as the names and amounts of

---

[5] Based on the information and lead available to the Government, the Government's publication notice in the *Laredo Morning Times* is an insufficient effort at reasonably notifying Torres-Lopez's customers. The circumstances of this case do not rise to the level "where it is not reasonably possible or practicable" for the Government "to give more adequate warning" of a forfeiture action, such as "in the case of persons missing or unknown." *Mullane*, 339 U.S. at 317.

those to whom they were sending the money. Torres-Lopez provided this log to the Government during discovery. [Dkt. No. 9, Ex. A: Torres-Lopez Resp. to Interrogatories]. The Government did not have to engage in a sprawling, open-ended, impractical investigation to identify individual potential claimants. *Cf. Jones v. Flowers*, 547 U.S. 220, 235-36 (2006) (indicating that the Government need not search income tax rolls or phone records to find a missing owner before proceeding with a tax sale when tax payer had an obligation to keep his address current).

The Court finds that the Government did not make a reasonable effort based on the circumstances to identify and notice all potential claimants. Thus, the Government did not comply with Supplemental Rule G(4)(b)(i) and more generally the Due Process clause of the Fifth Amendment. Therefore, the Court cannot order the forfeiture of Defendant currency as the parties ask in their "Motion for Agreed Judgment" and will dismiss without prejudice "Plaintiff's Motion to Strike Answer and for Default Judgment of Forfeiture and Alternatively, for Summary Judgment of Forfeiture." The Court **ORDERS** the Government to send Notice of this asset forfeiture proceeding to Torres-Lopez's customers named in his log following the Guidelines laid out in FED. R. CIV. P. SUPP. R. G(4)(b)(ii)-(iii).[6] This Notice should be sent within twenty ("20") days of this Order. Finally, the Court **INVITES** the parties to re-submit their Motion for Agreed Judgment in accordance with this Order.

### III. CONCLUSION

For the above stated reasons, the Court **DENIES** the Motion for Agreed Judgment but **INVITES** the parties to resubmit it in accordance with this Order. Second, the Court

---

[6] The Court is aware of the requirement of Rule G(5)(ii)(B) that generally "no later than 30 days after final publication of newspaper notice or legal notice" a person must file a claim for Defendant property when "notice was published but direct notice was not sent to the claimant or the claimant's attorney." SUPP. R. G(5)(ii)(B). The Court, however, finds that good cause exists to give Torres-Lopez's customers an additional 35 days to file a claim and 20 days to file an answer. *See* SUPP. R. G(5)( ii).
  The Court also is aware that some of the names in the log do not contain addresses. The Court directs that the Government take reasonable efforts as defined by case law to notify these persons.

**DISMISSES WITHOUT PREJUDICE** the "Motion to Strike Answer and for Default Judgment of Forfeiture and Alternatively, for Summary Judgment of Forfeiture." Third, the Court **ORDERS** the Government to provide notice of this action to Torres-Lopez's customers who can be identified.

    IT IS SO ORDERED.

    DONE this 15th day of June 2009, in Laredo, Texas.

                              Micaela Alvarez
                            UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**